# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| JOHN C. MIDDLETON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14CV1217 CDP |
| | ) | |
| TROY STEELE, et al., | ) | |
| | ) | |
| Defendants, | ) | |

## MEMORANDUM AND ORDER

Plaintiff John C. Middleton is scheduled to be executed by the state at 12:01 a.m. on July 16, 2014. He filed this action under 42 U.S.C. § 1983 on July 7, 2014, alleging that defendants violated his First Amendment, Eighth Amendment, and Due Process rights under the Constitution by interfering with counsel's investigation of his potential competency-for-execution ("CFE") claim by ordering current and former employees of the Missouri Department of Corrections ("MoDOC") not to cooperate with the investigation. Plaintiff has moved for a stay of his execution date so that he can get testimony from current and former correctional officers and medical workers regarding his behavior at Potosi Correctional Center ("PCC").

Defendants have moved to dismiss the case for failure to state a claim upon which relief can be granted and plaintiff filed a response today. Additionally, plaintiff filed an amended complaint. The Court will consider the motion to dismiss as directed to the amended complaint. Plaintiff also filed today a "second-in-time" supplemental habeas corpus petition under 28 U.S.C. § 2254 in which he raises for the first time the claim that he is not competent for execution. See Middleton v. Roper, Case No. 4:03-CV-543 (CDP) (E.D. Mo.) [ECF No. 130].[1]

---

[1] The Court has not conducted a thorough review of the supplemental habeas petition, and makes no determination as to whether its filing renders moot plaintiff's claims in this action.

On July 11, 2014, the Court held a hearing on the motion to stay. After hearing the arguments of counsel and reviewing the pleadings and documents filed in the case, the Court finds that the amended complaint does not state a plausible claim for relief under § 1983. The motion to stay is denied, and the case is dismissed.

**Background**

Plaintiff was convicted of first degree murder and sentenced to death by a jury in 1997. See Missouri v. Middleton, 995 S.W.2d 443, 452 (Mo. banc 1999). His sentence became final in 1999. Id. He filed his federal petition for writ of habeas corpus in April 2004. Middleton v. Roper, 4:03CV543 CDP (E.D. Mo.). The Court denied the petition in September 2005, id., and the Court of Appeals for the Eighth Circuit affirmed in August 2007, Middleton v. Roper, 498 F.3d 812 (8th Cir. 2007). In June 2009 the Court authorized counsel to pursue clemency proceedings on plaintiff's behalf.

On January 29, 2014, the Missouri Supreme Court ordered plaintiff to show cause why an execution date should not be set. Missouri v. Middleton, No. SC80043 (Mo. banc.). On May 30, 2014, the court set plaintiff's execution for July 16, 2014. Id. On June 2, 2014, plaintiff requested that the Court appoint William S. Logan, M.D., a forensic psychiatrist, "to evaluate him for mental illness and competency to be executed." Roper, 4:03CV543, ECF No. 107. On June 3, 2013, the Court recommended that the request for Dr. Logan's services be approved. Id. ECF No. 110. And Chief Judge William Jay Riley approved the request on June 13, 2014. Id. ECF No. 114.

In the amended complaint, plaintiff alleges:

Defendants have made clear to their staff and other individuals that they are not to speak with Mr. Middleton's counsel or the counsel of any inmate or any person on their behalf with regard to any matters involving a pending execution. . . . This is not a new practice. Rather, this is part of a pattern of behavior that has

occurred over a period of years, and has not ceased, despite court orders that would counsel otherwise. The culture and environment of the DOC is so ingrained that even retired staff are unwilling to give any evidence to anyone associated with one of the Department's prisoners regarding claims they are seeking to raise.

Plaintiff relies on a case formerly before this Court, Winfield v. Steele, 4:14CV1022 CDP (E.D. Mo.), for the proposition that defendants have chilled the speech of their current and former employees by threatening their jobs if they cooperate with counsel for death-sentenced prisoners.

Plaintiff asserts that counsel sent a letter to defendant Troy Steele on June 11, 2014, requesting to speak with any correctional officers who have had contact with him. Plaintiff neglects to say that in the letter counsel represented that they were looking for witnesses relevant to his clemency petition. Pl.'s Ex. K. The letter did not inform Steele that plaintiff was pursuing a CFE claim. Id. The letter listed several current and former MoDOC employees to whom counsel wished to speak. Id. Steele replied that he provided the information to the listed staff members still employed by MoDOC. Pl.'s Ex. L. And he informed counsel which of the listed staff members no longer worked for MoDOC. Id. Steele informed counsel that plaintiff was in a better position than him to advise counsel which staff members he has had contact with since moving to pre-execution status, and he stated that if plaintiff provided additional names, then he would advise those staff members that counsel wished to speak with them. Id.

Plaintiff alleges that his counsel and mitigation expert attempted to talk with several former MoDOC employees, all of whom refused to speak with plaintiff's representatives. Plaintiff's mitigation expert, Jessica Sutton, has submitted an affidavit detailing her encounters with the witnesses. Pl.'s Ex. M.

Sutton first sought to interview Freddy Johnson, a former employee of MoDOC. When Sutton told Johnson she wanted to talk about plaintiff, he told her to get off his property. Id. at

5-6. Sutton then visited Timothy Hahn, another former employee of MoDOC, who also told her to get off of his property. Id. at 6. Sutton also went to the home of Linda Penberthy, another former employee, who told Sutton that she would not talk to her. Id. Sutton then visited Pamela Gilmore, also a former employee, at her home. Id. at 7. Gilmore told Sutton she did not remember plaintiff, but she gave Sutton the names of other MoDOC employees who might remember something about plaintiff. Id. Those witnesses also refused to speak with Sutton. Id. at 7-8. Sutton visited Melody Haney, a former employee, who told Sutton she did not remember anything about plaintiff. Id. at 8. Finally, Sutton went to the home of Dr. R. Nakra, who had previously been plaintiff's psychiatrist. Id. Sutton told Dr. Nakra that she "wanted to find out who Mr. Middleton is as a person." Id. at 9. Sutton did not assert that she asked Dr. Nakra questions relevant to a CFE claim. Dr. Nakra told Sutton to contact the prison to review plaintiff's medical records. Id.

None of the employees reported any threats by state actors. Nor did they say they had been told by defendants not to speak to plaintiff's counsel or investigators. During the hearing, plaintiff's counsel stated that she did not know why the retired MoDOC employees refused to talk to her team. She also acknowledged that all of the current and former employees had the right to refuse to respond to plaintiff's requests for information and were under no obligation to cooperate.

In his motion to stay, plaintiff argues that "Potosi Correctional Center maintains a continuous policy and practice of threatening and punishing members of its staff who cooperate with counsel for prisoners facing execution." Plaintiff cites to the Winfield case in support of his argument. In that case, Winfield argued that defendants had interfered with his clemency application because his MoDOC witness, Terry Cole, had been placed under investigation for

4

"overfamiliarity" they day after he asked his supervisor if he could write a letter on Winfield's behalf in support of clemency. Upon being told he was under investigation, Cole rescinded his offer to write a letter on Winfield's behalf. Cole said that he felt his job was threatened because of his agreement to write the letter. The Court held an evidentiary hearing and concluded that Winfield was likely to succeed on the merits of his Due Process claim. Specifically, the Court found that Cole changed his decision to help Winfield because he felt threatened by the overfamiliarity investigation. The Court granted a stay of execution. The Court of Appeals for the Eighth Circuit reversed, finding that Winfield was not likely to succeed on the merits. Winfield v. Steele, ---F.3d---, 2014 WL 2766782 (8th Cir. June 17, 2014). The appellate court stated, "There is no evidence that any other state employee has been deterred from speaking in support of clemency for Winfield." Id. at *2.

Dr. Logan interviewed plaintiff to determine his competency to be executed. Pl.'s Ex. G. Dr. Logan sent a letter to plaintiff's counsel on July 2, 2014. In the letter, Dr. Logan states:

> You have asked that I perform a psychiatric examination of Mr. Middleton to render opinions about his competence to be executed and perhaps clemency. To this end I have examined Mr. Middleton at Potosi and have reviewed some correspondence and correctional/medical records.
>
> There is a theme of paranoia, likely created or enhanced by methamphetamine use that dates before his original offense. Over time he has developed certain beliefs about his charges and the resultant legal proceedings that are distorted by this paranoia, and may now be indicative of a psychotic delusional disorder. I am exploring whether these beliefs now could significantly color his perception/or rational understanding of his execution.
>
> Given the gravity of the [*sic*] Middleton's situation, it is important to explore all available avenues of information including the insight of and perceptions of those in the closest contact with him, such as medical personnel who have been treating him to reach an accurate opinion.

Pl.'s Ex. G at 1-2.

Plaintiff was prepared to present Sutton's testimony at the hearing, but stated that two other witnesses she would have called were unable to come to court on short notice.[2] Dr. Logan was not among the witnesses that plaintiff intended to present at the hearing. However, plaintiff has submitted Dr. Logan's affidavit along with the response to the motion to stay. In his affidavit, Dr. Logan criticizes the MoDOC mental health record as incomplete and states that "access to staff to collect their observations and to address specific records for clarification would be a key factor in reaching a conclusive opinion on Mr. Middleton's competency." ECF No. 18-1, p. 3.

Defendants move to dismiss on the basis that plaintiff's allegations are speculative and do not support a finding that they interfered with the CFE investigation. Defendants also argue that the last-minute nature of the motion to stay counsels against granting injunctive relief.

**Standards**

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must take all facts alleged in the complaint to be true and must construe the pleadings in the light most favorable to plaintiff. Gregory v. Dillard=s, 494 F.3d 694, 709 (8th Cir. 2007). The Federal Rules do not require great precision in pleadings. Id. at 710. AThe simplified notice pleading standard under Fed. R. Civ. P. 8(a) requires only a statement that gives the defendant fair notice of what the plaintiff=s claim is and the grounds upon which it rests.@ Id. (quotations omitted). However, the factual allegations in the complaint must be more than Alabels and conclusions@ or Aa formulaic recitation of the elements of a cause of action.@ Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Gregory, 494 F.3d at 710. A

---

[2] The Court rejected plaintiff's offer to present the testimony of the absent witnesses by telephone.

complaint must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

In Hill v. McDonough, the Supreme Court of the United States held that a motion to stay execution did not have to be brought as a habeas action, but could proceed under § 1983. 547 U.S. 573, 579-83 (2006). The Court stated "that a stay of execution is an equitable remedy. It is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." Id. at 584.

In Ford v. Wainwright, 477 U.S. 399 (1986), the Court held that the "Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane." Id. at 409-10. However, the Court did not provide a definition of competence to be executed. In a concurring opinion, Justice Powell wrote that "the Eighth Amendment forbids the execution only of those who are unaware of the punishment they are about to suffer and why they are to suffer it." Id. at 422.

In Panetti v. Quarterman, 551 U.S. 930 (2007), the Court agreed with Powell's definition, noting that "[a] prisoner's awareness of the State's rationale for an execution is not the same as a rational understanding of it." Id. at 959. The Court found that an inmate who meets Powell's test is still incompetent if "his awareness of the crime and punishment has little or no relation to the understanding of those concepts shared by the community as a whole." Id. The Court concluded:

> The underpinnings of petitioner's claims should be explained and evaluated in further detail on remand. The conclusions of physicians, psychiatrists, and other experts in the field will bear upon the proper analysis. Expert evidence may clarify the extent to which severe delusions may render a subject's perception of reality so distorted that he should be deemed incompetent. Cf. Brief for American Psychological Association et al. as Amici Curiae 17-19 (discussing the ways in which mental health experts can inform competency determinations).

Id. at 962.

**Discussion**

Plaintiff has failed to allege any specific facts showing that state actors interfered with the CFE investigation. Plaintiff relies heavily on the Winfield case to demonstrate that defendants' actions chilled the speech of their current and former employees. However, the Court of Appeals for the Eighth Circuit specifically found no evidence of any chilling effect or threats to MoDOC employees in that case.

Plaintiff's allegations of defendants' obstruction of the CFE investigation are wholly speculative and fail to raise a plausible claim for relief. Counsel admitted during the hearing that they do not know why the retired employees would not talk to their team. Plaintiff's own exhibits demonstrate that Steele cooperated with their investigation by telling the current employees named by plaintiff that plaintiff's team wanted to talk with them and by providing counsel with the names of employees who no longer worked for MoDOC.

Moreover, during the hearing, the Court repeatedly asked counsel why it was necessary to talk to former employees about their historical knowledge of plaintiff's behavior in order to raise a CFE claim in this Court. Competency to be executed is a "present-state issue," and "historical information, including prior records, [is] not likely to be informative regarding current functional legal abilities." Gary B. Melton, et al., PSYCHOLOGICAL EVALUATIONS FOR THE COURTS: A HANDBOOK FOR MENTAL HEALTH PROFESSIONALS AND LAWYERS § 7.08, 197 (3d ed. 2007). Counsel did not provide the Court with any plausible reason why such historical information is necessary for the investigation. Moreover, Dr. Logan's affidavit does not shed any additional light on this issue. Indeed, nothing in the affidavit suggests that a conclusion as to plaintiff's competency could not be made if information from the corrections employees turns out to be non-existent or simply unhelpful.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to stay [ECF No. 3] is **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motion to dismiss [ECF No. 11] is **GRANTED**, and this action is **DISMISSED**.

An Order of Dismissal will be filed separately.

Dated this 14th day of July, 2014.

CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE